Appellant. Mr. Cookley for the appellant, Mr. Goodhand for the appellate. Wayne. Good morning, Your Honor. May it please the court, counsel from government. The issues on appeal are specific applications of two sentencing enhancements that are factually specific to the offense of conviction. The enhancements were advocated for by the government and adopted by the district court at sentencing. I'm not here denying the extensive relevant conduct beyond the offense conduct captured in both the pre-sentence report and the comments of the district court. But both enhancements are specific to offense conduct, not the relevant conduct. And there's a bit of a tortured history that I'm not going to go into as to how we ended up in this case with a single 111B count and nothing else in an indictment that led to an immediate guilty plea at arraignment. But with respect to the two enhancements that were applied, one for more than minimal planning and the second for use of a dangerous instrument, as to the first, I believe the question begins or the issue begins with a question of what is the simple form of a section 111B enhancement because the case law tells us that the aggravated form, the plus two or the plus four levels apply to a offense that involves more than minimal planning and more than minimal planning is defined as planning beyond the simple form. Now, I think there's an issue here I need to raise just briefly that's set forth in the briefs, but not called out. And that is in the DC circuit in the Kim case in 1994, the circuit distinguished between what is called the simple form and what might be called the simplest form. And this circuit said the simplest form is not the baseline. The simple form is the baseline. And the defense reads that to mean that even among the simple form, there is a spectrum of conduct as to what might amount to a simple form before you jump to more than normal planning that takes you out of the simple form. So... Before you get to the question of how much planning there was, could I ask what seems to me an antecedent question, which is what has to be more than minimally planned? You say it's the offense, but the relevant guideline says the key question is whether the assault involved more than minimal planning. And that reference, I think, directs the court to the offense conduct. We are concerned here with what is the baseline offense conduct of a simple form... The offense has three elements, assault, the victim is an officer performing official duties, and use of a dangerous weapon. And the reason I'm focused on, let me just assume I think there was more than minimal planning of the assault, but maybe not more than minimal planning to use a dangerous weapon. Well, I think that's a very good point. On those assumptions, how would I come out? Well, I think you would have to come out that the use of the dangerous weapon was spontaneous, because it was an instrument that Mr. Denny... But the assault was more than minimally planned. Well, to the extent that the assault... That assumes that the planning identified by the district court, the travel, the acquisition of the various instruments and items brought with them, the discussion with other individuals, the financing, the raising of money, that all of those constitute steps in anticipation of an assault. And I think that is a step too far. But the point you've raised, I think is a good one, which is that the use of the weapon in this instance was the spontaneous picking up of the PVC pipe laying at his feet and within two seconds attempting to knock the instrument out of the officer's hands with that pipe. I was just going to say, wasn't there a retreat and then go and pick up a pipe? The retreat was from getting blasted in the face with the pepper spray. Why did he get blasted in the face with the pepper spray? He attempted to reach up and grab the instrument that the officer was using. He had tried once to disarm the spray from the officer, and that didn't fail. So then, as Judge Child says, he had to retreat, think of another plan. That's when he picked up the PVC pipe. I understand the court's point, but to say he thought of another plan, I think is reading too much into it. I'm sorry, he did it automaton or did he go, he was clearly planning to do whatever he could, first of all, to get into the Capitol. He had assaulted many officers already, and here was another officer who was standing between him and the inside of the Capitol. And to do that, he was going to have to get this crowd control spray out of the officer's, not just hand, it was up his whole arm as he was holding it. He was going to have to get it out, and he tried one tactic, and that didn't work, and as Judge Child says, retreated. And then he, there's no claim that someone handed him the pipe, he saw a pipe, thought about what to do with the pipe, picked the pipe up, and went and attacked the officer with it. Why is that itself, given that this, and by the way, when that didn't work, he went back, found another pipe, and threw it at the officer. Why isn't that enough to demonstrate more than minimal planning, even for the use of the pipe as a weapon to try and injure the officer and get the crowd control spraying? I think because, again, as I said to start, the even simple, the simple form has a spectrum of conduct before you get out of more than minimal planning. And I think if you look at the Smith case cited by the government from the Seventh Circuit, a very similar episode, where the defendant was dispossessed of a firearm in a bar, he then left, went back to his house, obtained another handgun and a long gun, then drove back to the bar in order to recover his first firearm. There you have an extended period of planning, contemplation. Does there have to be a certain amount of time? Because obviously that couldn't happen here. Had he gone home and come back, it would have all been over. So there can't be a time limit on this. It really has to be, do we see, like maybe that first time, maybe, hypothetically, or we can even assume when he jumped and tried to grab the spray gun out of the guy's arms, that might have been a simple assault. But he was then calculating that didn't work. Now, what shall I use to make it happen? And that's when he tried the PVC pipe. And we know he was continually calculating about how he was going to do it to get past this officer and get into the Capitol, because he had a third effort. Not charged here, but after the PVC pipe didn't work, he tried throwing another pipe. So why isn't it, if it were spread out more in time, or if he had to go back to his car to get the PVC pipe, it sounds like you would agree. But here he retreated, found a pipe, decided what to do with it, and went back at the officer. Why is that not enough compared to the case you just referenced? Well, again, I think there's a a gulf between those two factual scenarios where the scenario from the prior case is clearly planning. Tell me the factual gulf. Is it just time? I think so. It's sort of like a continuous sequence of events where, you know, one leads to another, leads to another within a matter of just a few seconds without really a thoughtful analysis of what's about to happen in the way that more than minimal planning decides. In the Seventh Circuit case, after his first gun was taken away, if the guy had then, he had his jacket say on the back of the chair, and then going back to his jacket and pulled out a second gun that he had in the pocket of his jacket, so never left the room, only took a matter of seconds, wouldn't that be the same? Wouldn't that still be more than a tool, a dangerous weapon, and use it? I think that's actually a second offense, but, and the second offense, that I'm asking you, is that that would be more than minimal planning? As to the second offense, yes. I'm not asking about the second offense. I'm saying as the time he goes and gets the gun out, that's more than minimal planning on attacking, I don't know if there's an officer there, but attacking the other person. This is, okay, so going, so leaving your first failed encounter, retreating, getting a weapon, a new weapon, first time he just had his hands, here he got a new weapon, and going back, that counts, in my hypothetical, as more than minimal planning. I don't think it's more than minimal. I think it might be planning, but it's not planning beyond the simple form. You seem to be doing a lot of explaining here today, but let's think about the statement of offense, and then we also have the plea colloquy in which there's a lot of admissions there, and I just feel like you're taking the time to kind of splice in between events and time periods right now, but there's a lot of admissions already on the record. Well, Your Honor, I think the plea colloquy obviously was aimed at the aggravated form of offense in the B count, which involves the use of a dangerous instrument, and there were admissions that were undeniable there. They were undeniable factually, that the PVC pipe was capable of being a dangerous weapon if employed in a certain fashion, but otherwise was benign, and so for the necessity of the plea, he had to admit that he qualified under the statute as a dangerous instrument. Yeah, but you're challenging both here today. Okay, so I think I see that as a signal. Let's go to the second one, and I don't want to spend too much more time. I'd like to reserve a little bit for rebuttal. I think what the government is trying to do here, and what the court did, was erase the specific reference in Note 1 to 2B2.1, which is that when you are using a dangerous instrument, as opposed to a dangerous weapon, that the instrument has to be wielded in a way that makes it with the intent to inflict bodily injury. Didn't the district find that here? Didn't the district find that here? He did, but I think on this issue, the video evidence so contradicts the district court's finding in that regard, that that finding is clearly erroneous. Okay, so this is just a factual dispute? Correct. Under a clear era statute? Yeah, the video shows that he was not swinging that at the officer. He was not swinging it in any way to injure the officer. What is our standard review for this fact question? Normally that's clear error, but we didn't argue below, but he didn't have this intent. The district court found it. You asked your client. He agreed to it, so it's like a plain clear error. I can't say I thought that one through. In the few seconds I have here left, I'm not sure I have a coherent answer to give you, but I acknowledge it's clear error. I can do some minimal planning. But I just think our point is that the video evidence simply doesn't support an intent to commit bodily injury with that instrument, and that's a separate question under the guidelines than the element of the statute, and with that, I'll reserve the balance. Well, another question real quick on jurisdiction. This was brought under 28 USC 1291, but 18 USC 3742A2 provides that you can file a notice of appeal when you're actually challenging the incorrect application of the sentencing guideline. So does that difference in jurisdiction statement matter to you in terms of how we anoint our jurisdiction here? Your Honor, that's a question I frankly wasn't cognizant of that error in the paperwork. We should have, the notice of appeal should have been for, I mean, these are only sentencing issues, so it should have been the error at sentencing as opposed to the error at any other junction in the case. Thank you. So I wish I could inform you further, but I can't. Why do we need to worry about intent? Dangerous weapon is a defined term, and the definition is the instrument is capable of inflicting serious bodily injury. If that prong is satisfied, we're done. I don't think so, because the specific application note under 2B 2.2 further refines that as to a dangerous instrument as compared to a dangerous weapon. It says dangerous weapon, which is the operative term in the guideline, has the meaning given it in 1B1.1 and includes something else. But 1B1.1 defines a dangerous weapon, as I said, if an instrument, which means there's no magic words difference between weapon and instrument, an instrument capable of causing serious bodily injury. But the specific enhancement under 2B2.2 speaks to the offense conduct. The instrument used in the offense was used with the intent to commit bodily injury. So now we're talking about the specific application of enhancement under 2B2.2, not a general definition under 1B1.1 note. But even if you just hit the hand, you know, to take the pepper spray out or any motion towards someone, why is that not intent? Just projecting yourself with someone, what is defined as a dangerous weapon. Well, again, though, I think the point goes back to the video, which the manner in which the pole was actually wielded shows that if he was trying to hit the officer in the head, he would have wielded it in a different way. If he was trying to hit the officer in the torso. People can commit bank robberies and they didn't intend to shoot somebody, but the circumstances bring themselves to that point where they feel like either I'm in danger or the other person's in danger and it's not going to be me. So when you're looking at intent in that regard, I'm not sure that I follow your train of thought that it has to be so planned out that circumstantially I plan to have all of these various steps in there. Sometimes things go awry, but if you have some initial intent, whatever happens later, that's your charge. I understand the course point, but I think here, again, that goes back to your example is using a dangerous weapon, which there's only one intent behind using a dangerous weapon as opposed to an instrument capable of being used in a dangerous fashion. And I'm trying to understand your argument about how he did the swinging of the pipe. If I understand your argument, it said he went sort of overhead and that shows not intent. Had he intended to injure, he would have gone side to side. Is that your point? Well, he didn't even really go overhead. He only lifted it beyond horizontal enough to get it above the instrument, above the pepper gas gun. And then he tried to drop it down on the pepper gas gun. He doesn't swing it at all. It simply falls of its own weight. Well, someone had to lift it up because the officer was in the elevated platform. The only part of his body that was really exposed because he was behind a brick wall was pretty much the arm holding the gun, his helmet and his head. So there was no torso to get. He would have hit a brick wall had he done it. So the only way to get to the officer or to the gun was to go up and over and down. And there was no way, unless you, you may be better at spray, all along the guy's arm and held up against his body. There was no way that you could get the canister and the spray gun out without at a minimum injuring his arm and hand. Well, I think if you look at the video closely, it's just, he's got a strap. It's an instrument that's operated with one hand on the trigger and there's a strap with the arm. But I don't know that Mr. Denny did that. You can't dislodge that without really doing, if it's visible to you and me on the video, it's visible to Mr. Denny, who was right there front and center. So. Understood. Any other questions? All right. We will, I know you wanted to save some time for rebuttal and we will give you, we will give you two minutes for rebuttal. Okay. Excellent. Yes. Thank you. Can we hear from the government now? Good morning, your honors. May it please the court, David Goodham of the United States. If I could get the issues in order and addressing first your question, Judge Katsas, relating to what is it we were talking about must be planned for? And I certainly noticed the tension between on the one hand, the language, an assault in the actual guideline, but then you go to the note and it says commission of the offense in a simple form. I took my cues, honestly, there's not a lot of case law out there on this, but I took my cues from the government's position in Coombs. And so we took on the sort of more stringent burden here by demonstrating more than minimal planning for an I mean, I'm sorry, one more. I'm sorry. Coombs is 823 Fed appendix and 813, 613, I'm sorry. And at page 617, it says the government contends. Now, critically, this is the caveat is this is a section 113 offense. I didn't see any section 111 offenses, but it says the government contends that the simple form of his crime required only that on a particular date, a particular location, he knowingly assaulted another individual with a dangerous weapon with intent to do violent harm. I will add that Coombs cites to Bean, which is 18 F third 1367, not an assault case. It's a Judge Easterbrook opinion. And Judge Easterbrook says the offense is the crime of which the defendant has been convicted. So anyway, you can read it either way. Yes. Assault in the context of a three element statute, one element of which is assault might just mean that element or it might be shorthand for whatever offenses are under the assault guideline. Right. And this went to a to to a two point two is labeled aggravated assault. So I agree that you could just take that to mean and picking up the title aggravated assault or it could be the assault in more simple form. But again, we feel comfortable with. I'm sorry. So sorry. Finish the finish. We feel comfortable with the evidence that we have here demonstrating that this is more than planning for even an A.D.W. assault with a dangerous weapon. So that's the burden we took. If I so if I think assault might be narrower, you're you're not pressing that position. We are not. And, you know, again, given the conflicting signals in the guideline, we just didn't. And, you know, the government at least has staked out a position elsewhere that we just want to be consistent and we weren't worried about the proof. OK, so if assault means the whole offense, there's lots of planning to come to Washington, march, protest, cause trouble. No question. Sure. What's the more than minimal planning to use the dangerous weapon? Well, first of all, we have to back up. We put it in context. We have his repeated admonitions that he is going to be fighting. He's going to be fighting to take back the country. He's going to be fighting to keep Biden out of office. We also have most critically his purchases. He purchases the protective vest. He purchases another weapon, the pepper spray, pepper spray, a dangerous weapon that might cinch it up for you. I wasn't sure. I believe it is. When you look at the definition of significant bodily injury in the context of this note, you see that serious bodily injury is, quote, injury involving extreme physical pain and or prolonged impairment of a bodily organ. That's one big one point one at no one paragraph. So I think not only do we have him purchasing a dangerous weapon, bringing, researching weapons law, excluding firearms as a necessary thing that he can bring to the district, purchasing what we believe is a dangerous weapon, the pepper spray. Then, and I think this is critical, even putting aside this notion of a calculated attempt to seize the weapon from the sergeant and going back and using the pipe, you look at the sequence of events here and you see that he exhausted, used up his pepper spray before he gets to the PDC pipe. So what we have here, I would suggest, is a man who is prepared for battle, consistent with his military training. He uses up, throws his canister of pepper spray at an officer before he then goes to the PDC pipe with respect to the sergeant, and he's adapting to the battlefield situation here. He goes to the PDC pipe, he picks it up, and he uses it to try and dislodge the weapon that the officer is using to protect himself and his comrades. So even- I'm just going to add, you mentioned that he had come to the Capitol planning, or I think Judge Katz has mentioned, to cause trouble. But it's even more than that. It was specifically, had mentioned in advance, police officers, which he had said were integrated with or part of Antifa. And so he came with the intent to fight police officers with these dangerous weapons. Absolutely. And the district court seized on that. The defendant made much below of the notion that you could take his rhetoric, and you could take his planning, and you could look at it and say, this was just self-defense measures that were taken, and this was puffery. And the district court seized on exactly the language that your honor has identified, which is, and he used the phrase, Antifa is a hobgoblin for you doing whatever you want to do. And as evidence of that, the district court pointed to that. D.C. police are assisting Antifa, and that was a day before this event. On the 11th circuit, Mr. Denny cites the case of the United States versus Tapia, which seems to require more sophisticated planning. Do you take that position at all? You know, no. I apologize. I don't have Tapia in front of me, and the facts escape me right now. I would suggest that actually the best case, and again, there's not a lot of case law here, but I would suggest ironically the best case that we have is the one cited by my opponent, which is Coombs. Coombs involves a man standing in a restroom stall in a national park. A woman comes in, sees the cowboy boots of the man in the stall, curious, but nonetheless goes to the stall next to the man, and the man comes out of his stall and attacks her. He has on toilet paper in a rough attempt maybe to disguise himself, and he uses pepper spray and his own fists, which were heavily shod—shod, not the right word—fortified with his rings. In that case, the court said that was minimal planning. He came out of the restroom stall, and he attacked the woman. We have much more evidence of the minimal planning in the weeks ahead here of this defendant, the, you know, the buying of the gear, the wearing of the gear. That's another thing here. I'm sorry, Your Honor. No, no, go ahead. The wearing of the gear here, you just have to look at the PSR report. It's replete with photographs. This man was ready for battle. He engaged in battle repeatedly over the course of that day. He did exactly what he said he was going to do, which is fight to keep Biden out of office. And just to make sure that we're not going too far in the opinion with the early pre-planning that goes way back to December on some of the Facebook posts, do we need to go that far back in terms of getting to the minimal planning? And I guess I piggyback on some of Judge Millett's question about there's a lot of instantaneous thoughts in terms of retreat, then go get another instrument. I just want to know how far we I think Coombs answers that question, too. But there's there's no sense that there was much advanced planning relating to the man coming out of his bathroom stall with toilet paper wrapped around his face. But that was significant enough for the plus two enhancement here. Certainly planning, of course, necessarily involves things that happened before the event. So I think we can go all the way back as far as you want, frankly, at least weeks. And what was your rationale in waiving the timeliness of the appeals, agreeing to that? Your Honor, it's I think it was a day late. And from our perspective, you know, this is an important issue. And there's no need for us to stand on the daily feature of the notice of appeal. And it's a discretionary matter. That's that's all. Obviously, you know, it's this court's call, as usual. I feel that we have adequately briefed the issue that my opponent concedes is a factual issue, clearly erroneous relating to the intent to do bodily injury. I think that's there. Do you have a preference between an ruling that intent is not necessary under the definition? No, no particular preference. We've staked out both positions. Certainly assume if you're waiving a time bar, it's because you want some legal ruling. Well, we certainly we certainly think the easier route here is when a defendant is asking that judge overturn a clearly overturned factual finding on a clearly erroneous standard. And, you know, again, I think the issue that your honor has questioned my opponent about relating to that, it's a complex one that that guideline I would suggest is not particularly cleanly written. And so anyway, again, we took on ADW in the first half of this argument, we're perfectly willing on. Yes. Okay. Clear error. Harder than plain error. Is clear error harder than plain error? Preserve this argument. I'm sorry, we didn't. Oh, right. Because he agreed that he had intended to. So I'm trying to figure out if it's right here on top of clear, or do we just stop the clear? Can safely just stop at clear error? I mean, I think, you know, and I would add, you know, he did not challenge the fact that this application, that this is enhancement applied. And you look at the definition of aggravated assault, and you see there are four options there. He didn't challenge the PSR's application of 282.2. And the only one of the four categories that applies here is the first one, dangerous weapon. And you see that one is defined as with intent to cause bodily injury. I think there is a waiver argument here. But of course, again, we've just decided that the easy route here is clear error. On the more than minimal planning, are you aware of cases where the planning has been in a relatively compressed time span, where it's, this one is a little hard to understand the things that happened in there, because there wasn't a back and forth, but sort of as Judge Childs teed up at the beginning, one might say that, you know, jumping up to try to grab the canister out of the officer's arm the first time would have been a spontaneous reaction. But when there's not a lot of time, and there seems to also be a, it wasn't that he, he hadn't sort of, presumably, there's no argument here that he had stashed the pipe there in advance to be used, it seemed to be a crime of opportunity in that sense. No, I'm sorry. Does that count as planning, or does that not? I think it can. The plain language definition is... Are there any cases that have dealt with this more compressed time? Not that I have seen, Your Honor. The best case I've seen, again, is the one that, I would analogize to premeditation in the context of murder, and the cases are replete with the notion that that can be seconds. So if we take premeditation, which seems to imply even more than just planning, then I would suggest that that's a pretty useful analogy here. Planning can be seconds. My colleagues have any other questions? Thank you very much. We would ask that you affirm the judgment and conviction below. Thank you. Mr. Shipley, as promised, we're going to give you two minutes. We need to unmute. Sorry, we can't hear you. Thank you, Your Honor. Address briefly the government's reference to coombs, which it claims is its best case. The facts of coombs are the defendant entered the women's bathroom, which is indication of deliberation of his intent. He waited for a female to enter the bathroom in a stall. He planned in advance by attempting to conceal his identity by wrapping toilet paper around his face, and then he committed the assault. So I think that's quite a distance from where we are here, and I think the government has just acknowledged it, and I think it has to, that there really is no case law with this sort of compressed time frame. All of the cases that we cited, and both the government and the defense have acknowledged, there's not a lot of good case law on an aggravated assault charge under 111B and this minimal planning issue. All of the cases involve a substantial sequence of events over a period of time, often involving more than one person. So none of that's applicable here. So to the extent that the matter of seconds that pass here constitutes assault in beyond the simple form, this panel will be making new hope in the circuit. Can I ask you a question that regarding, I'm sorry, I know you want to talk about the weapon, and I'll give you a minute on that, but what I'm trying to think about is there are plenty of situations where there's ongoing sort of riotous circumstances. Obviously, the attack on the Capitol was singular in many ways, but there are plenty of times that police have to encounter riotous disturbances, and there can be people in those disturbances who are simply sort of reacting in the moment, and there are others who come in and take advantage of the situation, and so are in the middle of it all, and start making more deliberate actions against police or against other people in the disturbance. How can we decide this case in favor of your client in a way that would not deprive the government of the ability to apply, or the courts to apply this enhancement in the middle of other sort of riotous circumstances, where decisions are made very fast, very quickly, but they can still be thought out and deliberated? I think, obviously, with the court writing on a blank slate here, that's a very difficult proposition. I would say part of the problem we have in the facts of this particular case is the government's error that led to a charge only a single discrete event, which is the assault with the PVC pipe on Officer KK. If there were multiple charges that extended over a period of time, then we'd be talking about offense conduct that extends over a period of time, and I think that's a clear slate for the court to write on, or it's an easier set of facts for the court to find, or to come to the position that you seem to be suggesting. This particular case, with one event... It seems a little odd to say he wasn't planning just because they didn't charge him with other conduct that he doesn't dispute having committed. But I think that takes us back to what the test is. Then the baseline is the assault in the simple form, and in that sense, we're talking about the PVC pipe on Officer KK, because that is the charged assault. Okay. Did you want to talk a minute about dangerous weapon? Give you 30 seconds. Yeah, I think I'll submit on that one. I think the court's identified the position of the two parties, and it's a question for the court to resolve. It is not... I agree with my colleague. It is not the cleanest enhancement to apply under circumstances such as this. Right. Thank you very much. I appreciate that. All right. The case is submitted.
judges: Millett, Katsas, Childs